William H. Brewster (WB 2245)
R. Charles Henn Jr. (RH 3049)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: bbrewster@kilpatricktownsend.com
         chenn@kilpatricktownsend.com

Bryan Wolin (BW 8339)
**KILPATRICK TOWNSEND & STOCKTON LLP**
The Grace Building
1114 Avenue of the Americas, Fl. 21
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: bwolin@kilpatricktownsend.com

*Attorneys for Plaintiff and Counterclaim Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENERGIZER BRANDS, LLC, <br><br>     Plaintiff and Counterclaim Defendant, <br><br>     v. <br><br> DURACELL U.S. OPERATIONS, INC., <br><br>     Defendant and Counterclaim Plaintiff. | CASE NO. 1:19-cv-09061-JPO <br><br> **MEMORANDUM OF LAW IN OPPOSITION TO DURACELL U.S. OPERATIONS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................1

II.   BACKGROUND ...........................................................................................................3

    A.   Procedural Background............................................................................................3

    B.   Factual Background .................................................................................................3

III.   ARGUMENT ...............................................................................................................12

    A.   Legal Standard ......................................................................................................12

    B.   The Complaint Plausibly Alleges that Duracell's Conduct Constitutes False Advertising Under Section 43(a) of the Lanham Act...................................12

        1.   The Complaint Plausibly Alleges that Duracell's Optimum Advertising Is Literally False....................................................................12

        2.   The Complaint Plausibly Alleges that Duracell's Optimum Advertising Is Impliedly False..................................................................15

    C.   The Complaint Plausibly Alleges that Duracell's Conduct Constitutes Unfair and Deceptive Trade Practices Under New York's General Business Law § 349 and § 350. ..........................................................................23

IV.   CONCLUSION............................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Am. Home Prods. Corp. v. Johnson & Johnson,*
   654 F. Supp. 568 (S.D.N.Y. 1987)),
   *aff'd*, 100 F.3d 943 (2d Cir. 1996) ........................................................................ 14

*Avis Rent A Car Sys., Inc. v. Hertz Corp.,*
   782 F.2d 381 (2d Cir. 1986) ............................................................................... 17

*Avola v. La.-Pac. Corp.,*
   991 F. Supp. 2d 381 (E.D.N.Y. 2013) ......................................................... 18, 22

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH,*
   843 F.3d 48 (2d Cir. 2016) ................................................................................ 19

*Euro-Pro Operating LLC v. Euroflex Ams.,*
   No. 08CV6231 (HB), 2008 WL 5137060  (S.D.N.Y. Dec. 8, 2008) ................. 14, 15

*JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.,*
   957 F. Supp. 426 (S.D.N.Y. 1997) ................................................................ 14, 15

*Koch v. Acker, Merrall & Condit Co.,*
   18 N.Y.3d 940 (2012) ......................................................................................... 23

*Lokai Holdings LLC v. Twin Tiger USA LLC,*
   306 F. Supp. 3d 629 (S.D.N.Y. 2018) ................................................................ 12

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.,*
   No. 16-CV-6986 (SJF) (ARL), 2020 WL 2079421 (E.D.N.Y. Apr. 30, 2020) ....... 12

*Oestreicher v. Alienware Corp.,*
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................... 21, 22

*Punian v. Gillette Co.,*
   No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ............... 21

*S.C. Johnson & Son, Inc. v. Clorox Co.,*
   241 F.3d 232 (2d Cir. 2001) ............................................................................... 17

*Sarikaputar v. Veratip Corp.,*
   371 F. Supp. 3d 101 (S.D.N.Y. 2019),
   *reconsideration denied,* No. 1:17-CV-814 (ALC), 2019 WL 2343215
   (S.D.N.Y. June 3, 2019) ................................................................................ 12, 13

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck
    Consumer Pharm. Co.*,
    906 F. Supp. 178 (S.D.N.Y. 1995) ................................................................. 14, 15

*Stewart v. Ocean State Jobbers, Inc.*,
    No. 3:17-CV-1266 (JCH), 2018 WL 379011 (D. Conn. Jan. 10, 2018)................................. 20

*Sussman-Automatic Corp. v. Spa World Corp.*,
    15 F. Supp. 3d 258 (E.D.N.Y. 2014) ................................................................. 12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ......................................................................... 15

*Urbina v. City of New York*,
    672 F. App'x 52 (2d Cir. 2016) ..................................................................... 12

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................. 17, 20

## Statutes

15 U.S.C. § 1125(a) ...................................................................................... 12

N.Y. Gen. Bus. Law § 349 ................................................................................ 23

N.Y. Gen. Bus. Law § 349(h) ............................................................................. 23

N.Y. Gen. Bus. Law § 350 ................................................................................ 23

## Rules & Regulations

Fed. R. Civ. P. 12(b)(6) ................................................................................ 12

Fed. R. Civ. P. 12(c) ................................................................................... 12

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................. 3

Fed. R. Civ. P. 8(a) .................................................................................... 12

Fed. R. Civ. P. 9(b) .................................................................................... 12

Plaintiff Energizer Brands, LLC ("Energizer") submits this memorandum of law in opposition to Defendant Duracell U.S. Operations, Inc.'s ("Duracell") Motion for Judgment on the Pleadings (ECF No. 19, the "Motion" or "Mot.").

## I.   INTRODUCTION

Energizer's Complaint[1] unambiguously alleges that the phrases "EXTRA LIFE," "EXTRA POWER," and "both is better than not both" *when considered as a whole and in the context of Duracell's packaging and television advertising*, are false and misleading to consumers of household batteries and materially influence those consumers' purchasing decisions. These allegations, which the Court must accept as true at this stage, preclude the Court from granting judgment on the pleadings or concluding that the advertising is mere "puffery." Duracell's Motion ignores or misconstrues the allegations in the Complaint, disregards key legal doctrines, and misapplies those doctrines it does address.

Energizer alleges that Duracell's product packaging, each of its advertisements, and its website for its new "premium" Optimum batteries, when each is viewed as a whole and in context, convey several literally and impliedly false messages, including that (i) Duracell Optimum batteries provide extra power and extra life compared to other AA and AAA batteries, and (ii) Optimum batteries have a longer shelf-life than certain other batteries. Energizer alleges that neither of these claims are true, and that Duracell knows it.

Duracell completely misconstrues these simple allegations, arguing that Energizer's claims arise from two of Duracell's tag lines considered in the abstract, and without context. This is wrong. Energizer does not claim that Duracell's advertisements are false only when its tag lines—"EXTRA LIFE | EXTRA POWER" and "both is better than not both"—are viewed in

---

[1] ECF No. 1 (the "Complaint" or "Compl.").

isolation. Indeed, Energizer specifically and repeatedly alleges that Duracell's advertisements are false when each is viewed "as a whole" and in the context of Duracell's packaging or television advertisements containing those claims. (Compl. ¶¶ 24, 31, & 42.) Duracell's statements to the contrary are simply incorrect, fatally undermining its Motion.

Duracell also argues that, if its inconspicuous disclaimers are considered, its marketing materials are literally true. But at this stage Energizer's factual allegations must be taken as true, and Duracell's narrative directly conflicts with the well-pleaded facts in Energizer's Complaint. More precisely, Energizer alleges that Duracell's disclaimers (a) flatly contradict the literally false primary message conveyed by each of Duracell's Advertisements when considered "as a whole" (Compl. ¶¶ 24, 31, & 42) and (b) are so small and hard to read that they fail to dislodge the false primary message conveyed by Duracell's marketing materials (*id.* ¶¶ 19, 30, & 41.) These allegations are firmly rooted in settled false advertising law, and courts consistently hold that inconspicuous disclaimers that contradict the primary message of an advertisement do not convert the advertisement from false to true.

Finally, the crux of Energizer's claim is that Duracell's advertising is *impliedly false*. Duracell pretends that the entire concept of impliedly false claims does not exist; indeed, the word "implied" appears nowhere in its Motion. Duracell instead steamrolls over the distinction between implied claims and puffery, effectively contending that advertisements only can convey literal claims stated in the text of the ad, and that anything else must be mere puffing. This is not an accurate description of how advertisements work, nor is it an accurate statement of the relevant law.

Duracell's Motion fails to properly capture the allegations contained in Energizer's Complaint and ignores or otherwise misses the mark with respect to fundamental false-

advertising law. For these reasons, and as explained further, below, it should be denied in its
entirety.

## II.    BACKGROUND

### A.    Procedural Background

Energizer filed its Complaint on September 30, 2019. After various extensions, Duracell
filed its answer to Energizer's Complaint, together with counterclaims, on April 20, 2020.[2] (ECF
No. 15.) On July 27, 2020, over three months after filing its answer and counterclaims, Duracell
filed its Motion seeking judgment on the pleadings.

### B.    Factual Background

Duracell and Energizer are direct competitors in the household battery segment. (Compl.
¶ 10.) Within that segment, AA and AAA batteries are the best-selling battery sizes, and are used
to power a wide variety of household devices, from remote controls to baby monitors, and from
flashlights to game consoles. (*Id.*)

Duracell offers several "tiers" of non-rechargeable AA and AAA batteries, including its
primary, best-selling Coppertop brand, a middle tier under the "Quantum" name, and the newly–
introduced, premium product under the name "Optimum." Energizer likewise offers tiers of AA
and AAA batteries. Energizer's primary AA and AAA battery product is *Energizer* MAX®.
Energizer's premium tier AA and AAA batteries are sold under the Ultimate Lithium™ name.
(*Id.* ¶¶ 11-12.)

In July 2019, coinciding with the launch of the Optimum batteries, Duracell began a
marketing and advertising campaign on a variety of platforms, including, but not limited to,
television, Facebook, YouTube, Twitter, in-store displays, and on product packaging to promote

---

[2] Energizer's time to amend its Complaint as of right expired 21 days thereafter, on May 11, 2020. *See* Fed. R. Civ.
P. 15(a)(1)(B).

its Optimum batteries. The following is a representative example of Duracell's product

packaging for its Optimum batteries (the "Product Packaging"):

### FRONT OF PRODUCT PACKAGING:



### BACK OF PRODUCT PACKAGING:



The Complaint alleges that Duracell Optimum batteries are often found on shelves in retail

outlets adjacent to Duracell's Coppertop batteries, a representative sample of which appears

below:

4



(*Id.* ¶¶ 13-15.)

The Complaint alleges that the Product Packaging contains several notable design elements that, taken *together* and viewed *in the retail context*, convey a variety of false or misleading messages. First, the front of the package emphasizes the phrase "EXTRA LIFE | EXTRA POWER." These statements are in large, bold type, and are centered on the product package. Second, the front of the package contains a tiny, sideways, barely legible, mice-type disclaimer—removed from the claims—stating "*Delivers extra life or extra power, vs. Coppertop AA [or AAA] in a wide range of devices," as depicted in the red circle in the image below, which is approximately the actual size of a 12-pack of Optimum batteries:



The Complaint alleges that Duracell's miniscule and sideways disclaimer is flatly inconsistent with, and indeed contradicts, the Product Packaging's bold, unqualified emphasis of the phrases "EXTRA LIFE*" and "EXTRA POWER*." (*Id.* ¶¶ 16-19.)

Third, concealed on the back of the Product Packaging, far from the large, bold, capitalized, primary tag line on the front, Duracell includes the language, "Duracell's **highest energy** disposable AA battery engineered to provide the **Extra Life*** or **Extra Power*** your devices need." (*Id*. ¶ 20.) Even this explanatory text bolds the phrases "Extra Life" and "Extra Power," further minimizing the word "or."

Fourth, the Optimum batteries, with the prominently-displayed "EXTRA LIFE*" phrase on the front of the Product Packaging, often are located on shelves adjacent to, and mixed with, Duracell's Coppertop packaging, with its prominent "GUARANTEED 10 YEARS IN STORAGE"

claim. By way of example, the following photograph depicts an in-store household battery display at the CVS store located at 1440 Broadway in this District:



The Complaint alleges that the proximity of these batteries, which themselves are similar in appearance will cause consumers to understand an implied claim of 10-year shelf life for Optimum, but that Optimum batteries have a shelf life that is substantially less than 10 years. (*Id.* ¶¶ 20-23.)

As a whole, the Complaint alleges that Duracell's Optimum battery Product Packaging conveys the following false and misleading messages:

a)     Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA);

7

> b)      Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA);
>
> c)      Optimum batteries have a longer shelf-life than all other batteries in the same size category (e.g., AAA or AA); and
>
> d)      Optimum batteries have a longer shelf-life than Coppertop batteries in the same size category (e.g., AAA or AA).

(*Id.* ¶¶ 24-25.) All four of these claims are impliedly false, arising from the Product Packaging as a whole, as well as, with respect to claims "b" and "c," its context on retail shelves. Furthermore, claim "a" is literally false, arising primarily from the substantial emphasis placed on the "EXTRA LIFE | EXTRA POWER" tagline, and minimization of the disclaimer, as discussed above.

Duracell has promulgated similar misleading advertising claims on various websites, including the following representative examples for the 12 count AA package of Optimum batteries (the "Product Website Images"):





As with the Product Packaging, the Product Website Images contain several notable design elements that, *taken together*, convey a variety of false or misleading messages. First, the Product Website Images clearly emphasize the phrase "EXTRA LIFE* | EXTRA POWER*" in large text, which is larger than all other text except for the brand and company names. Second, the Product Website Images contain small, barely legible, mice-type disclaimers stating "*Delivers extra life or extra power, vs. Coppertop AA/AAA in a wide range of devices." The Complaint alleges that Duracell's inconspicuous disclaimer is flatly inconsistent with and contradicts the Product Website Images' bold, unqualified emphasis of the phrases "EXTRA LIFE* | EXTRA POWER*." (*Id.* ¶¶ 26-30.) As a whole, Energizer alleges that Duracell's Optimum battery Product Website Images convey the following false and misleading messages:

a)   Optimum batteries provide *both* extra life *and* extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA); and

b)   Optimum batteries provide *both* extra life *and* extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA);

(*Id.* ¶¶ 31-32.) For the same reasons discussed above, both of these claims are impliedly false,

and claim "a" is also literally false.

The Complaint further alleges that Duracell has also made false and misleading advertising claims through various videos and television ads, including videos titled "Duracell x Toothbrush," "Internet Guy x Sweaty Guy," and "Beach x Bear" (the "Video Ads" and, together with the Product Packaging and Product Website Images, the "Advertisements"). The Video Ads have characters repeating the terms "Extra Life" and "Extra Power" over and over (and over), and then each of the Video Ads concludes with a prominent voice-over stating: "Because both is better than not both." The Video Ads also display the Product Packaging and graphic reproductions of the terms "Extra Life" and "Extra Power," as depicted below:





(*Id.* ¶¶ 33-35.)

As of the filing of Energizer's Complaint, the Video Ads had been broadcast widely on television, and jointly received more than 26 million views on youtube.com. As with the marketing and advertising materials discussed above, Energizer alleges that the Video Ads contain several elements which, taken together, convey a variety of false or misleading messages. First, the Video Ads say "because both is better than not both," which is an inherently false and misleading statement as the Optimum batteries do not deliver "both" extra life and extra power, as evidenced by Duracell's own disclaimers. Second, the Video Ads repeatedly emphasize the phrase "EXTRA LIFE* | EXTRA POWER*" in text which is larger than all other on-screen text. Third, the Video Ads contain only a small visual disclaimer stating "*VS. DURACELL COPPERTOP AA. DELIVERS EXTRA LIFE OR EXTRA POWER, IN A WIDE RANGE OF DEVICES." The Complaint alleges that Duracell's disclaimer is flatly inconsistent with the Video Ads' visual images and audio announcements, including the unqualified statement "because both is better than not both." The Complaint further alleges that, as a whole, each of Duracell's Video Ads conveys the following false and misleading messages:

    a)    Optimum batteries provide extra life and extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA); and

    b)    Optimum batteries provide extra life and extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA).

(*Id.* ¶¶ 36-43.) Once again, and for all of the same reasons discussed above, both of these claims are impliedly false, and claim "a" is also literally false.

## III.    ARGUMENT

### A.    Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is subject to the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 103 (S.D.N.Y. 2019), *reconsideration denied,* No. 1:17-CV-814 (ALC), 2019 WL 2343215 (S.D.N.Y. June 3, 2019) (citation omitted) "Thus, a court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Id.* (citation omitted). A motion for judgment on the pleadings must be denied when the subject pleading contains "sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Id.* at 104 (quoting *Urbina v. City of New York*, 672 F. App'x 52, 54 (2d Cir. 2016)).[3]

### B.    The Complaint Plausibly Alleges that Duracell's Conduct Constitutes False Advertising Under Section 43(a) of the Lanham Act.

#### 1.    The Complaint Plausibly Alleges that Duracell's Optimum Advertising Is Literally False

Energizer alleges that Duracell's Advertisements, which prominently feature an unqualified "EXTRA LIFE | EXTRA POWER" claim, convey the literally false message that Duracell's premium-tier Optimum battery provides **both** "extra life" **and** "extra power" compared to other batteries in the same category. (Compl. ¶¶ 24, 31, 42) In response, Duracell contends that these claims are true when its inconspicuous disclaimers are considered (Mot. at 2).

---

[3] Duracell makes repeated references to allegations in the Complaint that, Duracell claims, are "without support." (*See, e.g.*, Mot. at 1, 2, 5-6.) Though Duracell does not outright say so, it appears to be imposing a heightened pleading standard on Energizer beyond that required by Fed. R. Civ. P. 8(a). But, the Second Circuit has not adopted a heightened pleading standard for false advertising claims. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 637 n.1 (S.D.N.Y. 2018); *see also N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, No. 16-CV-6986 (SJF) (ARL), 2020 WL 2079421, at *12 n.9 (E.D.N.Y. Apr. 30, 2020) ("The Court analyzes the sufficiency of the complaint under the pleading standard of Rule 8(a) rather than Rule 9(b)."); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014) ("Absent any precedent counseling in favor of the Defendants' position, the Court declines to impose these heightened pleading standards on the Plaintiff's Lanham Act claims.").

Duracell's argument fails for two reasons. First, Duracell's argument is directed toward allegations found nowhere in Energizer's Complaint and, accordingly, is not just without merit, but also irrelevant. The Complaint clearly alleges that Duracell's Advertisements, **including the disclaimer**, convey the above-referenced false claim, and those allegations must be taken as true. Second, Duracell cannot cure a literally false claim through application of a small, hard-to-read disclaimer that expressly contradicts the primary claim of its Advertisements. For these reasons, Duracell's Motion must be denied.

With respect to the first point, Duracell asserts that Energizer does not "allege that the Challenged Advertisements, *when read in the context of the explanatory disclaimer*, are false or misleading." (Mot. at 5.) This assertion is flat wrong. After showing images of the advertisements—and the disclaimers—the Complaint alleges that Duracell's Advertisements, when each are considered "**as a whole**" (Compl. ¶¶ 24, 31, & 42 (emphasis added)), convey the above-referenced false claim. Clearly, the phrase "as a whole" includes Duracell's disclaimers; and such allegations must be accepted as true for purposes of Duracell's Motion. *Sarikaputar*, 371 F. Supp. 3d at 103.

But Energizer goes further, specifically explaining **why** the disclaimers fail to save Duracell's Advertisements: because they (a) flatly contradict the prominent, literally false message conveyed by Duracell's Advertisements when considered "**as a whole**," and (b) are so small, and so difficult to parse, that whatever information they do contain will have little to no impact. (Compl. ¶¶ 3, 18-19, 29-30, & 40-41) Duracell's argument is thus based on a misreading of the express language of the Complaint.

Setting aside the factual errors in Duracell's argument, it is a bedrock principle of false advertising law that inconspicuous, contradictory disclaimers cannot make false advertisements

13

true. A disclaimer that contradicts or "purports to change the apparent meaning of the claims and render them literally truthful" cannot "remedy the misleading nature of the claims." *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 906 F. Supp. 178, 186 (S.D.N.Y. 1995) (quoting *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987)), *aff'd*, 100 F.3d 943 (2d Cir. 1996). Moreover, an inconspicuous disclaimer cannot "cure a literally false statement." *JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997); *SmithKline*, 906 F. Supp. at 186 ("[A] footnote or disclaimer 'which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature' of a claim." (citation omitted)); *Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08CV6231 (HB), 2008 WL 5137060, at *6 (S.D.N.Y. Dec. 8, 2008) ("This Court has previously stated that a disclaimer or contradictory claim placed in an advertisement will not necessarily remedy an advertisement that is misleading per se where the disclaimer is in small text or difficult to read . . . .").

Here, the Complaint alleges that Duracell's disclaimers[4] are both contradictory *and* inconspicuous. Specifically, the Complaint repeatedly alleges that Duracell's disclaimers are "flatly inconsistent with" the primary message conveyed by each of Duracell's Advertisements. (Compl. ¶¶ 19, 30, & 41) the Complaint further alleges that the disclaimers are, for example, "miniscule" (*id.* ¶ 3), "barely legible" (*id.*), "tiny, sideways, barely legible, mice-type" (*id.* ¶ 18), and "miniscule and sideways" (*id.* ¶ 19.)

Instead of accepting these allegations as true—as the law requires at this stage—Duracell incorrectly characterizes Energizer's allegations, or knocks down straw-man versions of them. For example, Duracell notes that "Energizer does not dispute the factual accuracy of [Duracell's

---

[4] Which read, for example, "*Delivers extra life or extra power, vs. Coppertop AA/AAA in a wide range of devices." (Compl. ¶ 29)

disclaimers].” (Mot. at 2.) But Energizer has no need to address the *accuracy* of the disclaimers, because they (a) are inconsistent with the literally false primary message conveyed by Duracell’s Advertisements when considered as a whole, and (b) are so inconspicuous (Compl. ¶¶ 3, 18-19, 29-30, & 40-41), that—*even if accurate*—they “will not remedy the misleading nature of [Duracell’s] claim.” *SmithKline*, 906 F. Supp. at 186. Courts routinely find that claims are literally false despite the presence of directly contradictory “clarifying” disclaimers like those deployed by Duracell. *JR Tobacco of Am., Inc.*, 957 F. Supp. at 438 (“Therefore, JR’s disclaimers do not effectively cure the literal falsehoods communicated by the text of the brochure.”); *Euro-Pro Operating LLC*, 2008 WL 5137060, at *6 (same); *SmithKline*, 906 F. Supp. at 186 (same). Moreover, Duracell’s argument actually proves Energizer’s point: Duracell uses the “or” in the disclaimer because “and” is not true. Therefore, if consumers take away the implied claim that “and” is being conveyed (by virtue of the prominence or repetition of the claim and/or the ineffectiveness of the disclaimers), then they necessarily are being misled.

In short, Duracell’s Motion is premised on an erroneous characterization of Energizer’s Complaint and on ignoring settled law. The Complaint clearly and plausibly alleges that Duracell’s Advertisements, when considered as a whole, and despite the presence of tiny contradictory disclaimers, convey a literally false claim.

### 2. The Complaint Plausibly Alleges that Duracell’s Optimum Advertising Is Impliedly False

The Complaint also alleges that Duracell’s Advertisements convey several impliedly false messages, which leave “an impression on the listener or viewer that conflicts with reality,” (*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (alteration omitted) (citation omitted)), including:

a)   Optimum batteries provide **both** extra life **and** extra power in all devices as
     compared to all other batteries in the same size category (e.g., AAA or AA);

b)   Optimum batteries provide **both** extra life **and** extra power in all devices as
     compared to Coppertop batteries in the same size category (e.g., AAA or AA);

c)   Optimum batteries have a longer shelf-life than all other batteries in the same
     size category (e.g., AAA or AA); and

d)   Optimum batteries have a longer shelf-life than Coppertop batteries in the same
     size category (e.g., AAA or AA).

(Compl. ¶ 24.) Energizer identifies numerous elements of Duracell's Advertisements that, when

considered "as a whole," convey these impliedly false messages. Those elements include:

- Duracell's bold, unqualified language about quantifiable performance metrics:

  "EXTRA LIFE | EXTRA POWER;" (*id.* ¶¶ 2-3, 17, 19, 30)

- The placement and emphasis of the "EXTRA LIFE | EXTRA POWER" language, as

  compared to other more minimized elements of Duracell's Advertisements; (*id.*)

- The fact that Duracell's Optimum batteries are a "new, **premium** offering for AA and

  AAA batteries;" (*id.* ¶ 11) (emphasis added)

- The fact that Duracell's Optimum batteries are "often found on shelves in retail

  outlets adjacent to Duracell's Coppertop brand batteries;" (*id.* ¶ 15) and

- The fact that Duracell's Optimum batteries are "often are located on shelves adjacent

  to, and mixed with, Duracell's Coppertop packaging, with its prominent

  'GUARANTEED 10 YEARS IN STORAGE' claim." (*id.* ¶ 21.)

      In light of these extensive and detailed allegations, it is curious that *Duracell does not*

*even mention Energizer's impliedly-false claims, let alone address them*. Instead, Duracell notes

that certain claims described in Energizer's Complaint and attributed to Duracell's Optimum

Advertisements appear "nowhere in any of the advertisements challenged by Energizer." (Mot. at

1.) Duracell even asserts that the implied claims are "not made" at all. (*Id.* at 3.) But Duracell's

assertions do not reflect how advertisements, or the law of false advertising, work. It is widely

acknowledged that advertising agencies "are well paid for their ability to subtly communicate

specific messages while appearing to say almost nothing." *Verizon Directories Corp. v. Yellow*

*Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004).

Instead of substantively addressing Energizer's detailed allegations, Duracell asks this

Court to substitute its opinion for that of the consuming public—at the pleading stage—and hold

that, to the extent the Advertisements are not literally true, they are puffery. In support of this

request, Duracell wrongly argues that, "[s]tripped of the explanatory disclaimer, as Energizer

alleges, the generalized words 'Extra Life | Extra Power' and 'both is better than not both'

simply amount to nonactionable puffery." (Mot. at 8.) But Duracell's argument fails both

because it erroneously characterizes Energizer's pleading (yet again), and because it engages in

improper and legally meaningless dissection of the Advertisements.

The Second Circuit has long held that "disputatious dissection" of advertisements in the

false advertising context is entirely improper:

> In considering a false advertising claim, "[f]undamental to any task of interpretation
> is the principle that text must yield to context." "Thus, we have emphasized that in
> reviewing FTC actions prohibiting unfair advertising practices under the Federal
> Trade Commission Act a court must 'consider the advertisement in its entirety and
> not . . . engage in disputatious dissection. The entire mosaic should be viewed rather
> than each tile separately.' Similar approaches have been taken in Lanham Act cases
> involving the claim that an advertisement was false on its face."

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (alterations in original)

(quoting *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986)). It is for

this very reason that the Complaint repeatedly asserts that Duracell's false claims arise from the

17

individual Advertisements when viewed "as a whole." Duracell's entire "puffery" argument is directed toward legally irrelevant "disputatious dissection" of the Advertisements, and attacks pleadings not present in Energizer's Complaint.

Even if Duracell had properly argued that its Advertisements, considered "as a whole," constitute mere puffery, its Motion should still be denied. While there is no clearly articulated test for puffery, the decisions in this Circuit typically rely on three factors: "(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013) All three of these factors weigh strongly in favor of the conclusion that Duracell's Advertisements are not puffery, particularly when the factual allegations are accepted as true—as the Court must at this stage.

First, Duracell's Advertisements are not vague. The Optimum battery is a premium battery. (Compl. ¶ 11.) Consumers expect premium batteries to outperform many other batteries—otherwise there would be no reason to pay more for the premium option. By bolding proclaiming "EXTRA LIFE | EXTRA POWER," and relegating the contradictory disclaimer to mice-type text, Duracell conveys the impliedly false claim that Optimum batteries provide **both** of these clearly *quantifiable* performance benefits. (Compl. ¶¶ 18-19, 24, 29-31, & 40-42.) And by placing its Optimum batteries—with the on-pack "EXTRA LIFE" claim—on shelves next to its Coppertop batteries, with their "GUARANTEED 10 YEARS IN STORAGE" claim, Duracell further conveys the impliedly false message that Optimum batteries last longer than 10 years in storage. (Compl. ¶¶ 21-23.) Clearly, these claims are not so vague as to constitute puffery.

Second, Duracell's claims are anything but subjective. A battery's shelf-life (measured in years), power output (measured in watt-hours), and runtime (measured in days, weeks, months, or years) are all concrete, measurable performance metrics. Duracell's Advertisements impliedly

claim that Duracell's premium Optimum batteries perform better in all of these performance categories than other batteries. (Compl. ¶¶ 18-19, 24, 29-31, & 40-42.) Because "extra life" and "extra power" are <u>objectively</u> measurable and not subjective concepts, this element weighs heavily against a finding of puffery. These allegations in the Complaint are buttressed by the fact that, even though the disclaimers are inconspicuous and ineffective, a claim positioned as being "vs." another product is an explicitly objective one.

Third, and finally, Duracell's claims are clearly able to influence buyers' expectations. "If consumers, faced with the choice to purchase either the plaintiff's product or the defendant's, are likely to prefer the defendant's product by reason of the defendant's false advertising, the falsity of the defendant's advertising is material to the plaintiff's Lanham Act claim." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 71 (2d Cir. 2016). The Complaint thus specifically alleges that "[t]he claims in Duracell's advertisements concern **matters of primary and material importance to household battery consumers**: battery life and power output." (Compl. ¶ 55 (emphasis added).) Indeed, other than price and likelihood of leakage (which arguably falls under the "shelf-life" and "run-time" categories), it is difficult to conceive of any other product feature that could be relevant to household battery consumers.

Accordingly, the Complaint plausibly alleges that the false and misleading claims in Duracell's Advertisements—which tout measurable superiority in two key performance categories—are highly likely to influence consumer purchasing decisions. Because those allegations must be taken as true at the pleading stage, this element weighs strongly against a finding of puffery.

In short, Duracell's motion should be denied. As explained by Hon. Jack Weinstein:

At the level of a motion directed to the pleadings, the extensive citations submitted by the parties to widely disparate cases where the communication was characterized

19

as "puffery" or "fact" are almost useless. The characterization is similar to that of proximate cause, a rule that the court applies on an ad hoc basis where it thinks recovery should not be permitted for largely unexpressed reasons of policy and repressed biases.

*Verizon Directories*, 309 F. Supp. 2d 401, 407. In *Verizon*, Judge Weinstein went on to deny the motion to dismiss, finding that "[e]vidence is required on a motion for summary judgement [sic] or at trial. The motion to dismiss on the pleadings on the theory of puffery cannot be granted." *Id.* at 408.

The cases relied upon by Duracell do not support the notion that Duracell's Advertisements are mere puffery. First, Duracell leans heavily on *Stewart v. Ocean State Jobbers, Inc.* to support its legally meaningless contention that disputatiously-dissected parts of its Optimum Advertisements, when considered in isolation, are non-actionable puffery. In *Stewart*, the plaintiff purchased Duracell batteries that were manufactured to be sold in Asian markets, not the United States. *Stewart v. Ocean State Jobbers, Inc.*, No. 3:17-CV-1266 (JCH), 2018 WL 379011, at *2 (D. Conn. Jan. 10, 2018). "Instead of describing any specific problems with the batteries in question, Stewart repeatedly states that the Asian-market batteries are 'materially different' from batteries intended for the United States market." *Id.* at *3. Allegations regarding the product being "materially different" were made because that is the standard for determining whether gray-market product can be excluded, which was the issue in that case. While certain advertising statements are mentioned in *Stewart*, the plaintiff **never argued that these claims were false**, rendering any statement about whether they are puffery mere *dicta*. *Id.* at *3 ("Stewart does not argue that the advertising claims in question are materially misleading, or cite the court to any authority that would support such an argument."). *Stewart* instead concerned whether batteries intended for sale in Asia were materially different than the ones intended for sale in the United States—a question with no relevance whatsoever to Energizer's

claims against Duracell.

The other decisions relied upon by Duracell fare no better. In *Punian v. Gillette Co.*, the plaintiff disputed, among other things, a claim that Duracell's Coppertop batteries are "GUARANTEED for 10 YEARS in storage," "purchasing Duralock Batteries 'means that you will always have access to power' when needed," and "Duralock Batteries are 'a power solution [consumers] can trust.'" *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016) (alteration in original) (citation omitted). Of these, only the first has any conceivable relevance to Energizer's claims, and the court found it to be an implied warranty, not a false advertising claim. *Id.* at *8.

By contrast, here, Energizer has asserted no cause of action arising from Duracell's Coppertop 10-year shelf-life claim.[5] Instead, with regard to shelf-life, the Complaint alleges that Duracell's Product Packaging conveys the **_impliedly false_** claim that Optimum batteries have a longer shelf life than other batteries, including Coppertop, due to the proximity of Optimum and Coppertop packs on retail shelves. (Compl. ¶¶ 13-25.) Because Energizer's implied falsity claim arises from the interplay between unchallenged Coppertop product packaging and nearby or adjacent Optimum Product Packaging, *Punian* has no bearing on Energizer's claims against Duracell.

Finally, Duracell relies on another decision from the Northern District of California, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), which is readily distinguishable. *Oestreicher* was a putative class action in which the plaintiffs assert that defendant Alienware, a computer company, was knowingly selling materially defective computers. *Id.* at 967. The named plaintiff asserted, in brief, that he bought an Alienware laptop,

---

[5] Nor does Duracell contend that any of the challenged claims found in its Product Packaging are warranties.

that six months later it stopped working due to overheating from a known design flaw, and that Alienware knew about this flaw but did nothing to remedy or disclose it. *Id.* Based on these allegations, plaintiffs asserted a variety of legal theories and claims, including that certain marketing claims *for the laptop*—e.g., "higher performance," "longer battery life," "richer multimedia experience," and "faster access to data"—were false or misleading under California state law. *Id.* at 973. The court concluded that plaintiffs failed to provide a "specific statement or absolute characteristic regarding Alienware laptops" and, thus, all of the challenged statements are puffery. *Id.* The decision includes no analysis or discussion of the "battery life" claim.

In light of the foregoing, *Oestreicher* is clearly distinguishable. As is often the case with out-of-circuit decisions, the court in *Oestreicher* used an entirely different puffery standard than that articulated by Duracell in its Motion, and described in *Avola*. Moreover, the *Oestreicher* decision provides no supporting analysis for its conclusion that a battery life claim is not an "absolute characteristic" relating to a laptop. Even assuming, *arguendo*, that the *Oestreicher* standard did apply in the instant case, Duracell's claims about the Optimum battery life clearly pertain to an "absolute characteristic" of those products, *which are batteries*. Indeed, Energizer has alleged that battery life is one of the most important performance traits considered by relevant consumers.

Because Duracell ignores the very existence of Energizer's implied-falsity claims, and focuses its Motion on the legally irrelevant matter of whether discrete sub-parts of its Advertisements are mere puffery, the Motion must be denied. Additionally, the Motion should be denied because the Complaint plausibly alleges that Duracell's Optimum Advertisements, when each is viewed **<u>as a whole</u>**, (i) are not vague, (ii) are not subjective, and (iii) will influence buyers' decisions.

22

### C.     The Complaint Plausibly Alleges that Duracell's Conduct Constitutes Unfair and Deceptive Trade Practices Under New York's General Business Law § 349 and § 350.

"To successfully assert a claim under General Business Law § 349(h) or § 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (citations omitted). Because Duracell concedes that the Complaint adequately pleads elements (1) and (3) (Mot. at 13-14), we limit our analysis to element (2).

Duracell contends that its "'Extra Life,' 'Extra Power' and 'both is better than not both' claims are all generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." (Mot. at 14 (citation omitted).) As discussed *supra*, it is legally irrelevant whether these tag lines, devoid of context, could be viewed as puffery. Duracell cannot dispute that the Complaint alleges facts which, if true, demonstrate that Duracell's Advertisements, when each is viewed as a whole, are literally false, and convey additional implied false claims which are (i) precise, (ii) objective, (iii) likely to persuade consumers. (*See supra*.) Accordingly, Duracell's Motion should be denied.

## IV.     CONCLUSION

Duracell's Motion is riddled with misapplied law, incorrect descriptions of Energizer's Complaint, and unfounded conclusions. In the face of clear and unambiguous factual allegations in the Complaint, Duracell cannot overcome the substantial deference afforded Energizer as the non-movant on a motion for judgment on the pleadings. For all of the reasons described above, the Motion should be denied in its entirety.

Dated: New York, New York
          August 10, 2020

Respectfully Submitted,

By: */s/ William H. Brewster*
          William H. Brewster (WB 2245)
          R. Charles Henn Jr. (RH 3049)
          1100 Peachtree Street, NE, Suite 2800
          Atlanta, Georgia 30309
          Telephone: (404) 815-6500
          Facsimile: (404) 815-6555
          Email: bbrewster@kilpatricktownsend.com
          chenn@kilpatricktownsend.com

          Bryan Wolin (BW 8339)
          The Grace Building
          1114 Avenue of the Americas, Fl. 21
          New York, New York 10036
          Telephone: (212) 775-8700
          Facsimile: (212) 775-8800
          Email: bwolin@kilpatricktownsend.com

          *Attorneys for Plaintiff and Counterclaim Defendant*
          *Energizer Brands, LLC*