

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
t 212 775 8700  f 212 775 8800

October 6, 2020

direct dial 404 815 6572
direct fax 404 541 3240
CHenn@kilpatricktownsend.com

Hon. J. Paul Oetken
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:   *Energizer Brands, LLC v. Duracell U.S. Operations, Inc.,*
              Civil Action No. 1:19-cv-09061-JPO

Dear Judge Oetken:

      We represent Plaintiff and Counterclaim Defendant Energizer Brands, LLC ("Energizer"), and submit the following in opposition to Defendant and Counterclaim Plaintiff Duracell U.S. Operations, Inc.'s ("Duracell") letter-motion seeking a stay of discovery with respect to Energizer's claims in this action (ECF 27).

      This case has already been pending for more than a year. Energizer's Amended Complaint credibly alleges that Duracell's advertising for its Optimum battery products is not only false and misleading, but dangerous to the public. Duracell's request for a stay is the latest in an ever-growing string of attempts to avoid having to defend its false and misleading advertising on the merits. Duracell's recently-filed motion to dismiss is without merit, and this Court should deny Duracell's request to stay discovery while that motion is briefed and decided.

      **I.**    <u>**Relevant Factual Background**</u>

      In its Amended Complaint (ECF 23), Energizer alleges that Duracell's product packaging, each of its advertisements, and its website for its Optimum batteries, when each is viewed as a whole and in context, convey several literally and impliedly false messages, including that (i) Optimum batteries provide extra power *and* extra life compared to other AA and AAA batteries, (ii) Optimum batteries provide extra life in all devices as compared to Coppertop AA and AAA batteries, and (iii) Optimum batteries have a longer shelf-life than certain other batteries. (*See* Am. Comp. ¶ 64.) Energizer alleges that none of these claims are true and that Duracell knows it. (*Id.* ¶ 1.)

      The Amended Complaint specifically identifies numerous elements of Duracell's Optimum advertising that, taken as a whole, convey these false messages, including:

ANCHORAGE   ATLANTA   AUGUSTA   CHARLOTTE   DALLAS   DENVER   HOUSTON   LOS ANGELES   NEW YORK   RALEIGH   SAN DIEGO
SAN FRANCISCO   SEATTLE   SHANGHAI   SILICON VALLEY   STOCKHOLM   TOKYO   WALNUT CREEK   WASHINGTON   WINSTON-SALEM

- Duracell's bold, unqualified language about quantifiable performance metrics: "EXTRA LIFE | EXTRA POWER"; (*id.* ¶¶ 2-3, 18, 20, 33)
- The placement and emphasis of the "EXTRA LIFE | EXTRA POWER" language, as compared to other more minimized elements of Duracell's Advertisements; (*id.*)
- The fact that Duracell "has positioned the Optimum batteries in the marketplace as a *premium*, high-performing product"; (*id.* ¶ 54) (emphasis added)
- The striking similarity of Optimum batteries, and their Product Packaging, to Coppertop batteries, and their packaging; (*id.* ¶ 22);
- The fact that Duracell's Optimum batteries are "often found on shelves in retail outlets adjacent to Duracell's Coppertop brand batteries"; (*id.* ¶ 16) and
- The fact that Duracell's Optimum batteries "often are located on shelves adjacent to, and mixed with, Duracell's Coppertop packaging, with its prominent 'GUARANTEED 10 YEARS IN STORAGE' claim." (*id.* ¶ 23.)

Energizer also describes consumer survey results showing that some 25% of relevant consumers are confused and misled by Duracell's Product Packaging into believing that Optimum batteries provide ***both*** extra power ***and*** extra life ***in all devices***. (*Id.* ¶ 28.)

Energizer further alleges that Duracell's Optimum batteries use a different and more unstable chemistry than Coppertop, causing leakage in a large number of Optimum batteries that had to be pulled off of store shelves. Moreover, due to this unstable chemistry, Optimum's supposed runtime advantage – the so-called "EXTRA LIFE" – decreases rapidly over time, eventually disappearing entirely during the anticipated useful life of the batteries. A substantial portion of Optimum battery purchasers thus never realize *any* of the runtime performance benefits Duracell touts. (*Id*. ¶¶ 47-53.)

## II. Relevant Procedural Background

On September 30, 2019, Energizer filed its Complaint. (ECF 1.) Between September 30 and April 20, 2020, Energizer made substantial, but ultimately futile, efforts to resolve this dispute. On April 20, 2020, rather than moving to dismiss, Duracell filed its answer and counterclaim, asserting that a (now former) ad campaign for *Energizer* MAX® batteries constitutes false advertising. (ECF 15.) Energizer answered Duracell's counterclaim on May 11, 2020. (ECF 16.) On July 27, after Energizer's time to amend its pleading as of right expired, Duracell moved for judgment on the pleadings as to Energizer's complaint, (ECF 18), but did not seek a stay of discovery. That motion was fully briefed on August 17. (ECF 22.)

On September 8, 2020, Duracell initiated a second civil action in which it asserts that another ad campaign for *Energizer* MAX® batteries *also* constitutes false advertising. *See Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, Case No. 1:20-CV-07318-JPO (the "MAX Case," ECF 1). Duracell is seeking a preliminary injunction in the MAX Case and, on September 24, this Court entered a scheduling order with expedited fact discovery pertaining to the preliminary injunction to be substantially complete by October 21. (MAX Case, ECF 14.)

Hon. J. Paul Oetken
October 6, 2020
Page 3

In the present case, on September 16, following the discovery of new information not clearly known at the time Energizer initiated this action, including severe leakage and rapid performance decay issues with Optimum batteries, Energizer filed its Amended Complaint. (ECF 23). Duracell moved to dismiss the Amended Complaint on September 29 and, three days later, moved to stay discovery based on its motion to dismiss. (ECF 27). Energizer's response in opposition to the motion to dismiss is not due until October 13.

### III.     **Duracell has Failed to Show Good Cause Sufficient to Stay Discovery**

"The mere filing of a motion to dismiss does not constitute 'good cause' for the issuance of a stay." *Abbott Labs. v. Adelphia Supply USA*, No. CV20155826CBAMDG, 2016 WL 4148323, at *1 (E.D.N.Y. Aug. 4, 2016) (citations omitted). Courts primarily consider three factors to determine whether a stay is appropriate: "1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay." *Id*. Duracell has failed to carry its burden of demonstrating "good cause" under this test.

Duracell's motion to dismiss (ECF No. 26, the "MTD") does not make a strong showing that Energizer's claim is unmeritorious. *See Mirra v. Jordan,* No. 15CV4100ATKNF, 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (rejecting a "meritorious motion to dismiss" standard in favor of a higher "strong showing" standard). Indeed, and as will be explained in Energizer's forthcoming opposition,[1] The MTD suffers from at least three fatal flaws and, as such, falls far short of the "***strong*** showing" standard necessary to justify a stay of discovery.

***First,*** the MTD attacks a straw-man version of the Amended Complaint, rather than the actual pleaded claims. For example, Duracell asserts that Energizer does not "allege that the Challenged Advertisements, *when considered in light of the explanatory disclaimer*, are false or misleading." (MTD at 6.) This is wrong. After showing images of the advertisements—including the disclaimers—the Amended Complaint alleges that Duracell's advertisements, when each are considered "**as a whole**" (Am. Comp. ¶¶ 26, 34, & 45 (emphasis added)), convey the above-referenced false claims. Clearly, the phrase "as a whole" includes Duracell's disclaimers; and such allegations must be accepted as true for purposes of Duracell's Motion. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

***Second***, Duracell argues that if its inconspicuous disclaimers are considered, its marketing materials are literally true. But, at this stage, Energizer's factual allegations must be taken as true, and Duracell's creative narrative directly conflicts with the well-pleaded facts in Energizer's Amended Complaint. To be clear: Energizer alleges that Duracell's disclaimers (a) flatly contradict the literally false primary message conveyed by each of Duracell's

---

[1] In light of the space constraints in this letter (Individual Practice Rule 4(c)), Energizer can only provide a "preview" of the arguments it will present in its opposition to the MTD on October 13. Accordingly, if the Court is considering a discovery stay, Energizer respectfully requests a brief delay in resolving Duracell's request to stay discovery until after the Court has had the benefit of reviewing Energizer's full opposition to the Motion.

Hon. J. Paul Oetken
October 6, 2020
Page 4

Advertisements when considered "as a whole" (Am. Comp. ¶¶ 26, 34, & 45) and (b) are so small and hard to read that they fail to dislodge the false primary message conveyed by Duracell's marketing materials (*id.* ¶¶ 20, 33, & 44.) These allegations are firmly rooted in settled false advertising law, and courts consistently hold that inconspicuous disclaimers that contradict the primary message of an advertisement do not convert the advertisement from false to true. *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 906 F. Supp. 178, 186 (S.D.N.Y. 1995) (quoting *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987)), *aff'd*, 100 F.3d 943 (2d Cir. 1996) (a disclaimer that contradicts or "purports to change the apparent meaning of the claims and render them literally truthful" cannot "remedy the misleading nature of the claims."); *id.* ("[A] footnote or disclaimer 'which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature' of a claim." (citation omitted)); *Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08CV6231 (HB), 2008 WL 5137060, at *6 (S.D.N.Y. Dec. 8, 2008) ("This Court has previously stated that a disclaimer or contradictory claim placed in an advertisement will not necessarily remedy an advertisement that is misleading per se where the disclaimer is in small text or difficult to read . . . ."); *JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997) (an inconspicuous disclaimer cannot "cure a literally false statement.")

   ***Third***, Duracell contends that its ads either convey literally true claims or puffery, erasing any implied claims from existence. While there is no single test for puffery, decisions in this Circuit typically rely on three factors: "(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013) All three of these factors weigh strongly against any finding of puffery. The Optimum advertisements are not vague – they boldly proclaim that the premium-tier Optimum batteries provide "EXTRA LIFE" and "EXTRA POWER." Indeed, the survey results cited in the Amended Complaint confirm that such claims are not vague and are, in fact, misleading. Nor are the claims subjective – a battery's shelf-life (measured in years), power output (measured in watt-hours), and runtime (measured in days, weeks, months, or years) are all concrete, measurable performance metrics. Finally, the advertisements cannot help but influence consumer expectations, as, other than price, it is difficult to conceive of any other product feature that could be relevant to household battery consumers.

   Duracell's MTD fails to make a strong showing as to *any* of the claims in Energizer's Amended Complaint, let alone *all* of them, as would be necessary to justify a stay of discovery. Accordingly, the first factor weighs conclusively in favor of allowing discovery to proceed. *See Mirra*, 2016 WL 889559 at *2 (finding that movant failed to make a "strong showing" where the motion required complex analysis "based on various factors.")

   Duracell also has vastly overstated both the breadth of discovery with respect to Energizer's claims, and the burden of responding to it. Duracell responded to Energizer's first set of document requests 77 days before it requested a stay of discovery. In its response, Duracell refused to produce any documents responsive to 20 requests and agreed only to produce a subset of often-overlapping sets of documents in response to 23 other requests. Duracell further agreed, subject to various objections, to produce responsive documents it could obtain after a reasonable

Hon. J. Paul Oetken
October 6, 2020
Page 5

search in response to 33 other requests. This is not a large number of requests, and Duracell has had plenty of time to begin producing responsive documents.

Additionally, the scope of discovery is far from the wide-ranging enterprise suggested by Duracell. Energizer's claims relate solely to a new product, launched barely more than a year ago. While some of Energizer's requests seek documents for several years predating that period, it is unlikely that relevant documents exist much before Optimum's mid-2019 launch, and Duracell has offered no reason to believe otherwise. Accordingly, Duracell has failed to show the existence of the kind of vast and burdensome discovery necessary to support a stay, particularly on such a weak motion to dismiss.

Finally, Energizer would suffer unfair prejudice if a stay is entered. This case has been pending for over a year. Energizer has credibly alleged that it – and the consuming public – is being irreparably harmed by Duracell's false and misleading advertising. A stay of discovery, on the basis of an unmeritorious motion to dismiss, and which would likely persist for several months (in light of the delays caused by the ongoing Covid-19 pandemic), would compound that ongoing irreparable harm.[2]

## IV. Conclusion

Duracell's request to stay discovery should be denied because: (1) Duracell failed to make a "strong showing" that the Amended Complaint is unmeritorious; (2) the burden of responding to Energizer's discovery is relatively low and certainly proportional to the needs of the case; and (3) a further delay of this action will continue to mislead and harm the public and cause substantial irreparable damage to Energizer.

Respectfully submitted,

R. Charles Henn Jr. (RH3049)

cc: All counsel (via ECF)

---

[2] The fact that Energizer and Duracell elected to spend time late last year making substantial good faith attempts to settle this dispute before serving its complaint, which could have saved both parties substantial time and resources, does nothing to dislodge this ongoing irreparable harm.