William H. Brewster (WB 2245)
R. Charles Henn Jr. (RH 3049)
Bryan Wolin (BW 8339)
**KILPATRICK TOWNSEND & STOCKTON LLP**
The Grace Building
1114 Avenue of the Americas, Fl. 21
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: bbrewster@kilpatricktownsend.com
        chenn@kilpatricktownsend.com
        bwolin@kilpatricktownsend.com

*Attorneys for Plaintiff and Counterclaim Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENERGIZER BRANDS, LLC,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>DURACELL U.S. OPERATIONS, INC.,<br><br>    Defendant and Counterclaim Plaintiff. | CASE NO. 1:19-cv-09061-JPO<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DURACELL U.S. OPERATIONS, INC.'S MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

        A.      Procedural Background.............................................................................2

        B.      Factual Background ..................................................................................3

III.    ARGUMENT ....................................................................................................11

        A.      Legal Standard .......................................................................................11

        B.      The Amended Complaint Plausibly Alleges that Duracell's Conduct
                Constitutes False Advertising Under Section 43(a) of the Lanham Act................11

                1.      The Amended Complaint Plausibly Alleges that Duracell's
                        Optimum Advertising Is Literally False .....................................11

                2.      The Amended Complaint Plausibly Alleges that Duracell's
                        Optimum Advertising Is Impliedly False ...................................14

        C.      The Amended Complaint Plausibly Alleges that Duracell's Conduct
                Constitutes Unfair and Deceptive Trade Practices Under New York's
                General Business Law § 349 and § 350.................................................24

IV.     CONCLUSION ..................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Am. Home Prods. Corp. v. Johnson & Johnson*,
    654 F. Supp. 568 (S.D.N.Y. 1987) ...................................................... 13

*American Italian Pasta Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004) .......................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................... 11

*Avis Rent A Car Sys., Inc. v. Hertz Corp.*,
    782 F.2d 381 (2d Cir. 1986) .......................................................... 18

*Avola v. La.-Pac. Corp.*,
    991 F. Supp. 2d 381 (E.D.N.Y. 2013) ...................................... 19, 20, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................... 11

*Castrol Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993) .......................................................... 19

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
    843 F.3d 48 (2d Cir. 2016) ........................................................ 16, 21

*Clorox Co. P.R. v. Proctor & Gamble Com. Co.*,
    228 F.3d 24 (1st Cir. 2000)..................................................... 17, 18, 20

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ............................................... 18

*Euro-Pro Operating LLC v. Euroflex Ams.*,
    No. 08CV6231 (HB), 2008 WL 5137060 (S.D.N.Y. Dec. 8, 2008)............... 13, 14

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ........................................................ 11, 12

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    155 F. Supp. 3d 772  (N.D. Ill. 2016) ............................................... 20

*JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*,
    957 F. Supp. 426 (S.D.N.Y. 1997) ................................................. 13, 14

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)............... 17

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ................................................................................... 24

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir.1995) ........................................................................... 20

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) ........................................................ 17

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
    501 F. Supp. 517 (S.D.N.Y. 1980) ............................................................. 16

*Mead Johnson & Co. v. Abbott Laboratories*,
    201 F.3d 883 (7th Cir.),
    *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000) ................................ 17, 18

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................................ 23

*Punian v. Gillette Co.*,
    No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .......................... 22, 23

*R. J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*,
    511 F. Supp. 867 (S.D.N.Y. 1980) ............................................................. 16

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
    241 F.3d 232 (2d Cir. 2001) ....................................................................... 18

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck*
    *Consumer Pharms. Co.*,
    906 F. Supp. 178 (S.D.N.Y. 1995),
    *aff'd*, 100 F.3d 943 (2d Cir. 1996) ........................................................ 12, 13, 14

*Stewart v. Ocean State Jobbers, Inc.*,
    No. 3:17-CV-1266 (JCH), 2018 WL 379011 (D. Conn. Jan. 10, 2018) .......................... 21, 22

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ......................................................................... 16

*Telebrands Corp. v. Media Grp., Inc.*,
    No. 97 Civ. 6768(RPP), 1997 WL 790576 (S.D.N.Y. Dec. 24, 1997)........................ 16

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ....................................................................... 14

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ...................................................... 15, 21

**Statutes**

N. Y. Gen. Bus. Law § 349 ........................................................................................... 24

N. Y. Gen. Bus. Law § 349(h) ..................................................................................... 24

N. Y. Gen. Bus. Law § 350 ........................................................................................... 24

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 11, 17, 18

Plaintiff Energizer Brands, LLC ("Energizer") submits this memorandum of law in opposition to Defendant Duracell U.S. Operations, Inc.'s ("Duracell") Motion to Dismiss (ECF No. 26, the "Motion" or "Mot.") the Amended Complaint (ECF No. 23).

## I.   INTRODUCTION

The Amended Complaint unambiguously alleges that the phrases "EXTRA LIFE," "EXTRA POWER," and "both is better than not both" when considered *as a whole* and *in the context of Duracell's packaging and advertising*, are false and misleading to household battery consumers. Specifically, the Amended Complaint alleges that Duracell's advertising conveys several literally and impliedly false messages, including that Optimum batteries (i) provide extra life <u>and</u> extra power compared to other AA and AAA batteries, (ii) provide extra life in <u>all</u> devices as compared to Coppertop AA and AAA batteries, and (iii) have a longer shelf-life than certain other batteries. The Amended Complaint also describes the result of a survey showing that 25% of relevant consumers are confused and misled by the claims on packaging for the Optimum batteries. At the motion-to-dismiss stage, *all* of these allegations—including the empirical result of the survey—must be accepted as true.

Duracell's motion misconstrues these simple allegations, arguing that Energizer's claims arise from two of Duracell's tag lines in the abstract, and without considering context such as disclaimers. On the contrary, Energizer does <u>not</u> claim that Duracell's advertisements are false only when its tag lines are viewed in isolation. The Amended Complaint *repeatedly* alleges that Duracell's advertisements are false when each is viewed "as a whole" and in the context of Duracell's packaging or television advertisements containing those claims. (Am. Comp. ¶¶ 26, 34, & 45.)

Duracell next argues that its inconspicuous disclaimers render its advertising literally true. Duracell's argument, however, ignores two well-settled legal principles. First, at this stage, the

Court must accept as true all of Energizer's factual allegations, including that Duracell's disclaimers (a) flatly contradict the literally false primary message conveyed by each of Duracell's Advertisements when considered "as a whole" (Am. Comp. ¶¶ 26, 34, & 45) and (b) are so small and hard to read that they fail to dislodge the false primary message conveyed by Duracell's marketing materials (*id.* ¶¶ 20, 33, & 44). Second, courts consistently hold inconspicuous disclaimers that contradict the primary message of an advertisement do not convert the advertisement from false to true.

Finally, the crux of Energizer's Amended Complaint is that Duracell's advertising is *impliedly false.* Ignoring this, Duracell steamrolls over the distinction between implied claims and puffery, effectively contending that advertisements only can convey literal claims stated in the text of the ad, and that anything else must necessarily be puffery. That is not an accurate description of how advertisements work, nor is it an accurate statement of the relevant law. Energizer's survey results, for example, prove that a substantial portion of relevant consumers—25%—receive false and misleading messages from the Optimum product packaging. Under these circumstances, the Court should not—and indeed cannot—conclude that Duracell's advertising claims are mere puffery.

For all of these reasons, Duracell's Motion should be denied in its entirety.

## II.    BACKGROUND

### A.    Procedural Background

Energizer filed its complaint on September 30, 2019. After various extensions (associated with efforts to resolve the matter), Duracell filed its answer to Energizer's Complaint, together with counterclaims, on April 20, 2020. (ECF No. 15.) Energizer filed its Amended Complaint on September 15, 2020, with Duracell's consent. (ECF No. 23.) On September 29, 2020, Duracell moved to dismiss the Amended Complaint.

### B.   Factual Background

Duracell and Energizer are direct competitors in the household battery segment. (Am. Comp. ¶ 11.) Within that segment, AA and AAA batteries are the best-selling battery sizes, and are used to power a wide variety of household devices, from remote controls to baby monitors, and from flashlights to game consoles. (*Id.*)

Duracell offers several "tiers" of non-rechargeable AA and AAA batteries, including its primary, best-selling Coppertop brand, a middle tier under the "Quantum" name, and the newly–introduced, premium product under the name "Optimum." Energizer likewise offers tiers of AA and AAA batteries. Energizer's primary AA and AAA battery is *Energizer* MAX®. Energizer's premium tier AA and AAA batteries are sold under the Ultimate Lithium™ name. (*Id.* ¶¶ 12-13.)

In July 2019, coinciding with the launch of the Optimum batteries, Duracell began a marketing and advertising campaign on a variety of platforms, including, but not limited to, television, Facebook, YouTube, Twitter, in-store displays, and on product packaging to promote its Optimum batteries. The following is a representative example of Duracell's product packaging for its Optimum batteries (the "Product Packaging"):

<u>**FRONT OF PRODUCT PACKAGING**</u>      <u>**BACK OF PRODUCT PACKAGING**</u>



Energizer alleges that Duracell Optimum batteries are often found on shelves in retail outlets adjacent to Duracell's Coppertop batteries, a representative sample of which appears below:



(*Id.* ¶¶ 14-16.)

The Amended Complaint alleges that the Product Packaging contains several notable design elements that, taken *together* and viewed *in the retail context*, convey a variety of false or misleading messages. First, the front of the package emphasizes the phrase "EXTRA LIFE | EXTRA POWER." These statements are in large, bold type, and are centered on the product package. Second, the front of the package contains a tiny, sideways, barely legible, mice-type disclaimer—removed from the claims—stating "*Delivers extra life or extra power, vs. Coppertop AA [or AAA] in a wide range of devices," as depicted in the red circle in the image below, which is approximately the actual size of a 12-pack of Optimum batteries:

4



The Amended Complaint alleges that Duracell's miniscule and sideways disclaimer is not just ineffective, but also is flatly inconsistent with, and indeed contradicts, the Product Packaging's bold, unqualified emphasis of the phrases "EXTRA LIFE*" and "EXTRA POWER*." (*Id.* ¶¶ 17-20.)

Third, concealed on the back of the Product Packaging, far from the large, bold, capitalized, primary tag line on the front, Duracell includes the language, "Duracell's **highest energy** disposable AA battery engineered to provide the **Extra Life*** or **Extra Power*** your devices need." (*Id.* ¶ 21.) Even this explanatory text bolds the phrases "Extra Life" and "Extra Power," further minimizing the word "or." (*Id.*)

Fourth, the Optimum batteries bear a striking similarity to Coppertop batteries, as both are mostly black, with copper coloring on the upper third. Moreover, both batteries' packaging use

this same color scheme, with black on the top and bottom and a copper stripe across the middle. These similarities practically urge consumers to conflate the two products. (*Id.* ¶ 22.)

Fifth, the Optimum batteries, with the prominently-displayed "EXTRA LIFE*" phrase on the front of the Product Packaging, often are located on shelves adjacent to, and mixed with, Duracell's Coppertop packaging, with its prominent "GUARANTEED 10 YEARS IN STORAGE" claim. By way of example, the following photograph depicts an in-store household battery display at the CVS store located at 1440 Broadway in this District:



The Amended Complaint alleges that the proximity of these batteries, and their similar appearance, will cause consumers to understand an implied claim of 10-year shelf life for Optimum, but that Optimum batteries have a shelf life that is substantially less than 10 years. (*Id.* ¶¶ 23-25.)

As a whole, the Amended Complaint alleges that Duracell's Optimum battery Product Packaging conveys the following false and misleading messages:

a)   Optimum batteries provide **both** extra life **and** extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA);

b)   Optimum batteries provide **both** extra life **and** extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA);

c)   Optimum batteries have a shelf-life as long or longer than all other batteries in the same size category (e.g., AAA or AA); and

d)   Optimum batteries have a shelf-life as long or longer than Coppertop batteries in the same size category (e.g., AAA or AA).

(*Id.* ¶¶ 26-27.) All four of these claims are impliedly false, arising from the Product Packaging as a whole, as well as, with respect to claims "b" and "c," its context on retail shelves. Furthermore, claim "a" is literally false, arising primarily from the substantial emphasis placed on the "EXTRA LIFE | EXTRA POWER" tagline, and ineffectiveness of the disclaimer, as discussed above.

Energizer bolsters these allegations with reference to a consumer survey, which shows that   approximately 25% of relevant consumers are confused and misled by the claims on Duracell's Product Packaging into believing the Optimum batteries provide **both** extra power **and** extra life in **all** devices. (*Id.* ¶ 28.) Those consumers are confused and misled by the "EXTRA LIFE* | EXTRA POWER*" claim despite the presence of a contrary disclaimer (*Id.*)

Duracell has promulgated similar misleading advertising claims on various websites, including the following representative examples for the 12 count AA package of Optimum batteries (the "Product Website Images"):





As with the Product Packaging, the Product Website Images contain several notable design elements that, *taken together*, convey a variety of false or misleading messages. First, the Product Website Images clearly emphasize the phrase "EXTRA LIFE* | EXTRA POWER*" in large text, which is larger than all other text except for the brand and company names. Second, the Product Website Images contain small, barely legible, mice-type disclaimers stating "*Delivers extra life or extra power, vs. Coppertop AA/AAA in a wide range of devices." The Amended Complaint alleges that Duracell's inconspicuous disclaimer is not just ineffective, it is flatly inconsistent with and contradicts the Product Website Images' bold, unqualified emphasis of the phrases "EXTRA LIFE* | EXTRA POWER*." (*Id.* ¶¶ 29-33.) As a whole, Energizer alleges that Duracell's Optimum battery Product Website Images convey the following false and misleading messages:

    a)     Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA); and

    b)     Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA);

(*Id.* ¶¶ 34-35.) For the same reasons discussed above, both of these claims are impliedly false, and claim "a" is also literally false.

    The Amended Complaint further alleges that Duracell also has made false and misleading advertising claims through various videos and television ads, including videos titled "Duracell x Toothbrush," "Internet Guy x Sweaty Guy," and "Beach x Bear" (the "Video Ads" and, together

with the Product Packaging and Product Website Images, the "Advertisements"). The Video Ads have characters repeating the terms "Extra Life" and "Extra Power" over and over (and over), and then each of the Video Ads concludes with a prominent voice-over stating: "Because both is better than not both." The Video Ads also display the Product Packaging and graphic reproductions of the terms "Extra Life" and "Extra Power," as depicted below:





(*Id.* ¶¶ 36-38.)

As of the filing of Energizer's complaint, the Video Ads had been broadcast widely on television, and jointly received more than 26 million views on youtube.com. As with the marketing and advertising materials discussed above, Energizer alleges that the Video Ads contain several elements which, taken together, convey a variety of false or misleading messages. First, the Video Ads say "because both is better than not both," which is an inherently false and misleading

statement as the Optimum batteries do not deliver "both" extra life and extra power, as evidenced by Duracell's own disclaimers. Second, the Video Ads repeatedly emphasize the phrase "EXTRA LIFE* | EXTRA POWER*" in text which is larger than all other on-screen text. Third, the Video Ads contain only a small visual disclaimer (with no corresponding audio) stating "*VS. DURACELL COPPERTOP AA. DELIVERS EXTRA LIFE OR EXTRA POWER, IN A WIDE RANGE OF DEVICES." The Amended Complaint alleges that Duracell's disclaimer is not just ineffective, it is flatly inconsistent with the Video Ads' visual images and audio announcements, including the unqualified statement "because both is better than not both." The Amended Complaint further alleges that, as a whole, each of Duracell's Video Ads conveys the following false and misleading messages:

> c)  Optimum batteries provide extra life and extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA); and
>
> d)  Optimum batteries provide extra life and extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA).

(*Id.* ¶¶ 39-46.) Once again, and for all of the same reasons discussed above, both of these claims are impliedly false, and claim "a" is also literally false.

Finally, Energizer alleges that Optimum batteries are unusually unstable, causing elevated leakage rates and accelerated performance deterioration, none of which is disclosed in any of the Duracell Advertisements. Because Optimum batteries, like any household batteries, are likely to sit in drawers and on shelves for years before use, many consumers will never realize the "EXTRA LIFE" performance benefits Duracell touts, either because the batteries will have leaked and become entirely unusable, or because their performance has degraded to Coppertop-level performance, or worse, by the time they are actually used. As a result, the Advertisements convey a further literally or impliedly false claim: "Optimum batteries provide extra life in all devices as compared to Coppertop batteries in the same size category." And, for

this same reason, Duracell's Product Packaging likewise conveys a further false claim:
"Optimum batteries have a shelf life as long or longer than Coppertop batteries in the same size
category." (*Id.* ¶¶ 47-54.)

## III.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
At this stage, the Court must accept all factual allegations in the complaint as true and draw all
reasonable inferences in favor of the non-moving party. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.
2009). *Twombly* and *Iqbal* do not require that the claims be certain or proven at the pleading
stage, nor are "detailed factual allegations" required. *Twombly*, 550 U.S. at 555, 570. Indeed, "[a]
claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
678.

### B.   The Amended Complaint Plausibly Alleges that Duracell's Conduct Constitutes False Advertising Under Section 43(a) of the Lanham Act.

#### 1.   The Amended Complaint Plausibly Alleges that Duracell's Optimum Advertising Is Literally False

Energizer alleges that Duracell's Advertisements, which prominently feature an
unqualified "EXTRA LIFE | EXTRA POWER" claim, convey the literally false message that
Duracell's premium-tier Optimum battery provides **both** "extra life" **and** "extra power" compared
to other batteries in the same category. (Am. Comp. ¶¶ 26, 34, 45.) In response, Duracell contends
that these claims are true when its disclaimers are considered. (Mot. at 1-2.) Duracell's argument
fails for two reasons. First, it is directed toward allegations found nowhere in the Amended

Complaint and, accordingly, is not just without merit, but also irrelevant. The Amended Complaint clearly alleges that Duracell's Advertisements, **including the disclaimers**, convey the above-referenced false claim, and those allegations must be taken as true. Second, Duracell cannot cure a literally false claim through application of a small, hard-to-read disclaimer that expressly contradicts the primary claim of its Advertisements. For these reasons, the Motion must be denied.

With respect to the first point, Duracell asserts that Energizer does not "allege that the Challenged Advertisements, *when considered in light of the explanatory disclaimer*, are false or misleading." (Mot. at 6.) This is wrong. After showing images of the Advertisements—including the disclaimers—the Amended Complaint alleges that Duracell's Advertisements, when each are considered "**as a whole**" (Am. Comp. ¶¶ 26, 34, & 45 (emphasis added)), convey the above-referenced false claim. Clearly, the phrase "as a whole" includes Duracell's disclaimers; and such allegations must be accepted as true for purposes of Duracell's Motion. *Harris*, 572 F.3d at 71, 75-76.

Energizer goes further, explaining why the disclaimers fail to save Duracell's Advertisements: they are ineffective because they (a) flatly contradict the prominent, literally false message conveyed by Duracell's Advertisements when considered "**as a whole**," and (b) are so small, and so difficult to parse, that whatever information they do contain will have little to no impact. (Am. Comp. ¶¶ 3, 19-20, 32-33, & 43-44.) Duracell's argument is thus based on a misreading of the express language of the Amended Complaint.

Setting aside Duracell's factual errors, it is a bedrock principle of false advertising law that inconspicuous, contradictory disclaimers cannot make false advertisements true. A disclaimer that contradicts or "purports to change the apparent meaning of the claims and render them literally truthful" cannot "remedy the misleading nature of the claims." *SmithKline Beecham Consumer*

*Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995) (quoting *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987)), *aff'd*, 100 F.3d 943 (2d Cir. 1996). Moreover, an inconspicuous disclaimer cannot "cure a literally false statement." *JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997); *SmithKline*, 906 F. Supp. at 186 ("[A] footnote or disclaimer 'which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature' of a claim." (citation omitted)); *Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08CV6231 (HB), 2008 WL 5137060, at *6 (S.D.N.Y. Dec. 8, 2008) ("This Court has previously stated that a disclaimer or contradictory claim placed in an advertisement will not necessarily remedy an advertisement that is misleading per se where the disclaimer is in small text or difficult to read . . . .").

Here, Energizer alleges that Duracell's disclaimers[1] are both contradictory *and* inconspicuous. Specifically, Energizer repeatedly alleges that Duracell's disclaimers are "flatly inconsistent with" the primary message conveyed by each of the Advertisements. (Am. Comp. ¶¶ 20, 33, & 44.) Energizer further alleges that the disclaimers are, for example, "miniscule" (*id.* ¶ 3), "barely legible" (*id.*), "tiny, sideways, barely legible, mice-type" (*id.* ¶ 19), and "miniscule and sideways" (*id.* ¶ 20). It is these very traits that render the disclaimers ineffective.

Instead of accepting these allegations as true—as the law requires at this stage—Duracell mischaracterizes Energizer's allegations, or knocks down straw-man versions of them. For example, Duracell notes that "Energizer does not dispute the factual accuracy of [Duracell's disclaimers]." (Mot. at 2.) But Energizer need not address the *accuracy* of the disclaimers, because they (a) are inconsistent with the literally false primary message conveyed by Duracell's

---

[1] Which read, for example, "*Delivers extra life or extra power, vs. Coppertop AA/AAA in a wide range of devices." (Am. Comp. ¶ 32.)

Advertisements when considered *as a whole*, and (b) are so inconspicuous (Am. Comp. ¶¶ 3, 19-20, 32-33, & 43-44), that—*even if accurate*—they "'will not remedy the misleading nature' of [Duracell's] claim." *SmithKline*, 906 F. Supp. at 186 (citation omitted). Courts routinely find that claims are literally false despite the presence of directly contradictory "clarifying" disclaimers like those deployed by Duracell. *JR Tobacco of Am., Inc.*, 957 F. Supp. at 438 ("Therefore, JR's disclaimers do not effectively cure the literal falsehoods communicated by the text of the brochure."); *Euro-Pro Operating LLC*, 2008 WL 5137060, at *6 (same); *SmithKline*, 906 F. Supp. at 186 (same). Duracell's argument actually proves Energizer's point: Duracell uses "or" in the disclaimer because "and" is not true. Therefore, if consumers take away the implied claim that "and" is being conveyed (by virtue of the prominence or repetition of the claim and/or the ineffectiveness of the disclaimers), then they necessarily are being misled.

In short, Duracell's Motion is premised on a misapprehension of Energizer's Amended Complaint, and on ignoring settled law. The Amended Complaint clearly and plausibly alleges that Duracell's Advertisements, when considered as a whole, and despite the presence of tiny, contradictory disclaimers, are literally false.

### 2.    The Amended Complaint Plausibly Alleges that Duracell's Optimum Advertising Is Impliedly False

Energizer also alleges that the Advertisements convey several impliedly false claims that leave "an impression on the listener or viewer that conflicts with reality," (*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (alteration and citation omitted)):

a) Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to all other batteries in the same size category (e.g., AAA or AA);

b) Optimum batteries provide ***both*** extra life ***and*** extra power in all devices as compared to Coppertop batteries in the same size category (e.g., AAA or AA);

c) Optimum batteries provide extra life in all devices as compared to Coppertop batteries in the same size category (e.g. AAA or AA);

14

    d) Optimum batteries have shelf-life as long or longer than all other batteries in the same size category (e.g., AAA or AA); and

    e) Optimum batteries have shelf-life as long or longer than Coppertop batteries in the same size category (e.g., AAA or AA).

(Am. Comp. ¶ 75.) Energizer identifies numerous elements of Duracell's Advertisements that, when considered "as a whole," convey these impliedly false messages. Those elements include:

- Duracell's bold, unqualified language about quantifiable performance metrics: "EXTRA LIFE | EXTRA POWER;" (*id.* ¶¶ 2-3, 18, 20, 33)

- The placement and emphasis of the "EXTRA LIFE | EXTRA POWER" language, as compared to other more minimized elements of Duracell's Advertisements; (*id.*)

- The fact that Duracell "has positioned the Optimum batteries in the marketplace as a *premium*, high-performing product;" (*id.* ¶ 54) (emphasis added)

- The striking similarity of Optimum batteries, and their Product Packaging, to Coppertop batteries, and their packaging; (*id.* ¶ 22);

- The fact that Duracell's Optimum batteries are "often found on shelves in retail outlets adjacent to Duracell's Coppertop brand batteries;" (*id.* ¶ 16) and

- The fact that Duracell's Optimum batteries "often are located on shelves adjacent to, and mixed with, Duracell's Coppertop packaging, with its prominent 'GUARANTEED 10 YEARS IN STORAGE' claim." (*id.* ¶ 23.)

    In light of these extensive and detailed allegations, it is curious that Duracell only mentions Energizer's impliedly-false claims in passing, and refuses to meaningfully address them. Instead, Duracell notes that certain claims described in Energizer's Amended Complaint and attributed to Duracell's Optimum Advertisements appear "nowhere in any of the advertisements challenged by Energizer." (Mot. at 1.) But Duracell's assertions do not reflect how advertisements, or the law of false advertising, work.

    It is widely acknowledged that advertising agencies "are well paid for their ability to subtly communicate specific messages while appearing to say almost nothing." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004). Duracell's claims are far

from subtle, though, as evidenced by the empirical consumer survey data described in the Amended Complaint. The survey tested Duracell's Product Packaging against a control depicting an altered version of the packaging designed to communicate that Optimum batteries may provide a device with either extra life <u>or</u> extra power, rather than both extra life <u>and</u> extra power. (Wolin Decl., Ex. 1.)[2] The survey found that approximately **<u>one in four</u>** relevant consumers, or **<u>25%</u>**, are misled by the claims on Duracell's Product Packaging into believing the Optimum batteries provide *both* extra power *and* extra life in *all* devices. (Am. Comp. ¶ 28.)

Courts routinely find that 25% confusion is sufficient to support a finding of implied claim falsity. *See Telebrands Corp. v. Media Grp., Inc.*, No. 97 Civ. 6768(RPP), 1997 WL 790576, at *6 (S.D.N.Y. Dec. 24, 1997) (finding 20% of consumers receiving false message sufficient to demonstrate that plaintiff "has suffered irreparable harm," and granting preliminary injunction); *R. J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*, 511 F. Supp. 867, 876 (S.D.N.Y. 1980) (finding 25% of consumers receiving false message sufficient to demonstrate irreparable harm, and granting preliminary injunction); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 69–70 (2d Cir. 2016) (survey evidence showing 16-17.3% confusion was sufficient, together with evidence of consumer ignorance, to support a finding of implied claim falsity at trial); *McNeilab, Inc. v. Am. Home Prods. Corp.*, 501 F. Supp. 517, 525 (S.D.N.Y. 1980) (finding 23% of consumers receiving false message sufficient to support a finding of implied claim falsity at trial).

Instead of substantively addressing Energizer's well-pleaded allegations (including the

---

[2] The expert report of Hal Poret (the "Poret Report"), which summarizes the survey and its results, is attached as Exhibit A to the accompanying Declaration of Bryan Wolin ("Wolin Decl."). Energizer possessed and relied upon the Poret Report when preparing and filing the Amended Complaint. (Am. Comp. ¶ 28.) Accordingly, this Court may consider the report without converting Duracell's Motion into one for summary judgment. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (when deciding a motion to dismiss, a court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." (citation omitted)).

survey results), Duracell asks this Court to disregard the survey entirely as either conclusory or irrelevant in light of the puffery defense. The Court should decline to do so. The survey results are not "conclusory statements and naked assertions." (Mot. at 15.) To the contrary, they are firmly grounded in documentary evidence. Moreover, the survey results bear directly on a critical issue in this action: whether the impliedly false claims described in the Amended Complaint have confused enough relevant consumers to be actionable. As explained above, the survey clearly shows a degree of consumer confusion sufficient to meet this standard.

Energizer's survey weighs heavily against any finding of puffery at this early stage of the case. Indeed, courts have routinely held that "[t]here is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (citation omitted). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Kacocha v. Nestle Purina Petcare Co*., No. 15-CV-5489 (KMK), 2016 WL 4367991, at *15 (S.D.N.Y. Aug. 12, 2016) (citation omitted) (declining to dismiss plaintiff's claims on the grounds that the allegedly misleading information is mere puffery).

Duracell's reliance on *American Italian Pasta Co. v. New World Pasta Co*., 371 F.3d 387 (8th Cir. 2004), for the proposition that the survey is irrelevant is misplaced. (Mot. at 9.) The Eighth Circuit decision in *American Italian Pasta Co.* relied entirely on the Seventh Circuit decision in *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000), which rejected a consumer survey offered by plaintiff *only after* a three-day hearing on a motion for preliminary injunction. Courts have refused to apply the holding in *Mead Johnson* where a more limited record is involved. *See Clorox Co.*

*P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 38 (1st Cir. 2000) (stating that *Mead Johnson* is different and that "it would not be appropriate to undertake a similar analysis of the *Clorox* survey on the limited record subject to review after a 12(b)(6) dismissal"). As held by this Court, "[w]hile it is possible for a court to decide this question [of whether an act is misleading] as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346, 349 (S.D.N.Y. 2020) (denying defendant's motion to dismiss upon holding that "the Court cannot determine as a matter of law that no reasonable consumer could be misled").

Duracell next invites the Court to substitute its opinion for that of the consuming public more generally, again at the pleading stage, by finding that there are no implied claims at all in the Advertisements—just literal (and true) claims and puffery. In support of this request, Duracell wrongly argues that, "[s]tripped of the explanatory disclaimer, as Energizer alleges, the generalized words 'Extra Life | Extra Power' and 'both is better than not both' amount to nonactionable puffery." (Mot. at 10.) But Duracell's argument fails both because it erroneously characterizes Energizer's pleading (yet again), and because it engages in improper and legally meaningless dissection of the Advertisements.

The Second Circuit has long held that "disputatious dissection" of advertisements in the false advertising context is entirely improper:

> In considering a false advertising claim, "[f]undamental to any task of interpretation is the principle that text must yield to context." "Thus, we have emphasized that in reviewing FTC actions prohibiting unfair advertising practices under the Federal Trade Commission Act a court must 'consider the advertisement in its entirety and not . . . engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately.' Similar approaches have been taken in Lanham Act cases involving the claim that an advertisement was false on its face."

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (alterations in original) (quoting *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986)). For this

reason, the Amended Complaint repeatedly alleges that Duracell's false claims arise from the individual Advertisements when viewed "<u>as a whole</u>." Duracell's entire "puffery" argument is directed toward a legally irrelevant "disputatious dissection" of the Advertisements, and attacks pleadings not present in Energizer's Amended Complaint.

Even if Duracell had properly argued that its Advertisements, considered "as a whole," constitute mere puffery, its Motion still should be denied. While no single test for puffery predominates, the decisions in this Circuit typically rely on three factors: "(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013). All three of these factors weigh strongly in favor of the conclusion that Duracell's Advertisements are not puffery, particularly when the factual allegations are accepted as true—as the Court must at this stage.

First, Duracell's Advertisements are not vague. The Optimum battery is a premium battery. (Am. Comp. ¶ 54.) Consumers expect premium batteries to outperform many other batteries—otherwise there would be no reason to pay more for the premium option. By boldly proclaiming "EXTRA LIFE | EXTRA POWER," and relegating the contradictory disclaimer to mice-type text, Duracell conveys the impliedly false claim that Optimum batteries provide **<u>both</u>** of these clearly *quantifiable* performance benefits. (Am. Comp. ¶¶ 19-20, 26, 32-34, 43-45, 64, & 66.) And by placing its Optimum batteries—with the on-pack "EXTRA LIFE" claim—on shelves next to its Coppertop batteries, with their "GUARANTEED 10 YEARS IN STORAGE" claim and highly similar design, Duracell also conveys the impliedly false message that Optimum batteries last longer than 10 years in storage. (Am. Comp. ¶¶ 22-25.) These claims are not so vague as to constitute puffery. *See Castrol Inc. v. Pennzoil Co*., 987 F.2d 939, 941, 945-46 (3d Cir. 1993) (claim that motor oil provides "longer engine life and better engine protection" is not mere puffery because it "is both

specific and measurable by comparative research"); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 817-18 (N.D. Ill. 2016) ("Rust-Oleum's statements that Restore is 'easy to apply', 'low maintenance', and a 'long-lasting alternative to the endless cycle of repairing and repainting' are not mere puffery when read together as they indicate that Restore, when compared to other products on the market, is easier to apply, does not have to be applied as often, and lasts longer.").

Second, Duracell's claims are anything but subjective. A battery's shelf-life (measured in years), power output (measured in watt-hours), and runtime (measured in days, weeks, months, or years) are all concrete, measurable performance metrics. Duracell's Advertisements impliedly claim that Duracell's premium Optimum batteries perform better in all of these performance categories than other batteries. (Am. Comp. ¶¶ 19-20, 26, 32-34, 43-45, 64, & 66.) Because "extra life" and "extra power" are <u>objectively</u> measurable and not subjective concepts, this element weighs heavily against a finding of puffery. These allegations in the Amended Complaint are buttressed by the fact that, even though the disclaimers are inconspicuous and ineffective, courts consistently state that comparative claims such as these are not subjective. *See Clorox Co. P.R.*, 228 F.3d at 39 (statement that "invites consumers to compare" product to competitors is not puffery); *Avola*, 991 F. Supp. 2d at 393 ("The 'subjectivity' factor [of the puffery analysis] applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or comparison with the product's competitors." (citing *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995))); *Duran*, 450 F. Supp. 3d at 347 (holding "that EZ Seed grows grass '50% thicker with half the water' compared to 'ordinary seed'" to be actionable). Third, and finally, Duracell's claims clearly are able to influence buyers' expectations. "If consumers, faced with the choice to purchase either the plaintiff's product or the defendant's, are likely to prefer the

defendant's product by reason of the defendant's false advertising, the falsity of the defendant's advertising is material to the plaintiff's Lanham Act claim." *Church & Dwight Co.*, 843 F.3d at 71. The Amended Complaint specifically alleges that "[t]he claims in Duracell's advertisements concern *matters of primary and material importance to household battery consumers:* battery life and power output." (Am. Comp. ¶ 67 (emphasis added).) Indeed, other than price, it is difficult to conceive of any other product feature that could be relevant to household battery consumers.

The Amended Complaint thus plausibly alleges that the false and misleading claims in Duracell's Advertisements—which tout measurable superiority in multiple key performance categories—are highly likely to influence consumer purchasing decisions. In short, Duracell's Motion should be denied. As explained by Hon. Jack Weinstein:

> At the level of a motion directed to the pleadings, the extensive citations submitted by the parties to widely disparate cases where the communication was characterized as "puffery" or "fact" are almost useless. The characterization is similar to that of proximate cause, a rule that the court applies on an ad hoc basis where it thinks recovery should not be permitted for largely unexpressed reasons of policy and repressed biases.

*Verizon Directories*, 309 F. Supp. 2d at 407. In *Verizon*, Judge Weinstein denied the motion to dismiss, finding that "[e]vidence is required on a motion for summary judgement [sic] or at trial. The motion to dismiss on the pleadings on the theory of puffery cannot be granted." *Id.* at 408.

The cases relied upon by Duracell do not support the notion that Duracell's Advertisements are mere puffery. First, Duracell leans heavily on *Stewart v. Ocean State Jobbers, Inc*. to support its legally meaningless contention that disputatiously-dissected parts of its Optimum Advertisements, when considered in isolation, are non-actionable puffery. In *Stewart*, the plaintiff purchased Duracell batteries that were manufactured to be sold in Asian markets, not the United States. *Stewart v. Ocean State Jobbers, Inc*., No. 3:17-CV-1266 (JCH), 2018 WL 379011, at *2 (D. Conn. Jan. 10, 2018). "Instead of describing any specific problems with the batteries in

question, Stewart repeatedly states that the Asian-market batteries are 'materially different' from batteries intended for the United States market." *Id.* at *3. Allegations regarding the product being "materially different" were made because that is the standard for determining whether gray-market product can be excluded, which was the issue in that case. While certain advertising statements are mentioned in *Stewart*, the plaintiff **never argued that these claims were false**, rendering any statement about whether they are puffery mere *dicta*. *Id.* ("Stewart does not argue that the advertising claims in question are materially misleading, or cite the court to any authority that would support such an argument."). *Stewart* instead concerned whether batteries intended for sale in Asia were materially different than the ones intended for sale in the United States—a question with no relevance to Energizer's claims against Duracell.

The other cases relied upon by Duracell fare no better. In *Punian v. Gillette Co.*, the plaintiff disputed, among other things, a claim that Duracell's Coppertop batteries are "GUARANTEED for 10 YEARS in storage," "purchasing Duralock Batteries 'means that you will always have access to power' when needed," and "Duralock Batteries are 'a power solution [consumers] can trust.'" *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016) (alteration in original) (citation omitted). Of these, only the first has any conceivable relevance to Energizer's claims, and the court found it to be an implied warranty, not a false advertising claim. *Id.* at *8.

Here, Energizer does not assert a cause of action arising from Duracell's Coppertop 10-year shelf-life claim.[3] With regard to shelf-life, the Amended Complaint alleges that Duracell's Product Packaging conveys the **impliedly false** claim that Optimum batteries have a longer shelf life than other batteries, including Coppertop, due to the proximity of Optimum and Coppertop

---

[3] Nor does Duracell contend that any of the challenged claims found in its Product Packaging are warranties.

packs on retail shelves. (Am. Comp. ¶¶ 14-27.) Because Energizer's implied falsity claim arises from the interplay between unchallenged Coppertop packaging and nearby or adjacent Optimum Product Packaging, *Punian* has no bearing on Energizer's claims against Duracell.

Finally, Duracell relies on another decision from the Northern District of California, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), which is readily distinguishable. *Oestreicher* was a putative class action in which the plaintiffs asserted that defendant Alienware, a computer company, was knowingly selling materially defective computers. *Id.* at 967. The named plaintiff asserted, in brief, that he bought an Alienware laptop, that six months later it stopped working due to overheating from a known design flaw, and that Alienware knew about this flaw but did nothing to remedy or disclose it. *Id.* Based on these allegations, plaintiffs asserted a variety of legal theories and claims, including that certain marketing claims *for the laptop*—e.g., "higher performance," "longer battery life," "richer multimedia experience," and "faster access to data"—were false or misleading under California state law. *Id.* at 973. The court concluded that plaintiffs failed to provide a "specific statement or absolute characteristic regarding Alienware laptops" and, thus, all of the challenged statements are puffery. *Id.* The decision includes no analysis or discussion of the "battery life" claim.

In light of the foregoing, *Oestreicher* is clearly distinguishable. As is often the case with out-of-circuit decisions, the court in *Oestreicher* used an entirely different puffery standard than that articulated by Duracell in its Motion, and described in *Avola*. Moreover, the *Oestreicher* decision provides no supporting analysis for its conclusion that a battery life claim is not an "absolute characteristic" relating to a laptop. Even assuming, *arguendo*, that the *Oestreicher* standard did apply to this case, Duracell's claims about the Optimum battery life clearly pertain to an "absolute characteristic" of those products, *which are batteries*. Indeed, Energizer has alleged

that battery life is one of the most important performance traits considered by relevant consumers.

In short, the Motion should be denied because the Amended Complaint plausibly alleges that Duracell's Optimum Advertisements, when each is viewed as a whole, (i) are not vague, (ii) are not subjective, and (iii) will influence buyers' decisions.

### C.     The Amended Complaint Plausibly Alleges that Duracell's Conduct Constitutes Unfair and Deceptive Trade Practices Under New York's General Business Law § 349 and § 350.

"To successfully assert a claim under General Business Law § 349(h) or § 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (citations omitted). Because Duracell does not dispute elements (1) and (3) (Mot. at 16-18), we limit our analysis to element (2).

Duracell contends that its "'Extra Life,' 'Extra Power' and 'both is better than not both' claims are all generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." (Mot. at 17 (citation omitted).) As discussed *supra*, it is legally irrelevant whether these tag lines, devoid of context, could be viewed as puffery. Duracell cannot dispute that the Amended Complaint contains allegations that, if true, demonstrate that Duracell's Advertisements, when each is viewed as a whole, are literally false, and convey additional implied false claims which are (i) precise, (ii) objective, (iii) likely to persuade consumers. (*See supra*.) Accordingly, Duracell's Motion should be denied.

## IV.   CONCLUSION

Duracell's Motion is riddled with misapplied law, incorrect descriptions of Energizer's Amended Complaint, and unfounded conclusions. In the face of clear and unambiguous factual allegations in the Amended Complaint, Duracell cannot overcome the substantial deference

afforded Energizer as the non-movant on a motion dismiss. For all of the reasons described above, the Motion should be denied in its entirety.

Dated: New York, New York
          October 13, 2020

                                        Respectfully Submitted,


                                        By: */s/ William H. Brewster*
                                            William H. Brewster (WB 2245)
                                            R. Charles Henn Jr. (RH 3049)
                                            Bryan Wolin (BW 8339)
                                            The Grace Building
                                            1114 Avenue of the Americas, Fl. 21
                                            New York, New York 10036
                                            Telephone: (212) 775-8700
                                            Facsimile: (212) 775-8800
                                            Email: bbrewster@kilpatricktownsend.com
                                            chenn@kilpatricktownsend.com
                                            bwolin@kilpatricktownsend.com


                                            *Attorneys for Plaintiff and Counterclaim Defendant*
                                            *Energizer Brands, LLC*